MICHAEL W. BROWN AND LINDA L. BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 12240-89
United States Tax Court
T.C. Memo 1991-560; 1991 Tax Ct. Memo LEXIS 608; 62 T.C.M. (CCH) 1214; T.C.M. (RIA) 91560; November 18, 1991, Filed *608 Decision will be entered under Rule 155. Michael W. Brown and Linda L. Brown, pro se. Louis H. Hill, for the respondent. PATE, Special Trial Judge. PATE
MEMORANDUM FINDINGS OF FACT AND OPINION This case was assigned pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income taxes in the amounts of $ 2,381 and $ 2,078 for the taxable years 1985 and 1986, respectively. We must decide whether petitioners' automobile racing activity in 1985 and 1986 was engaged in for profit. All of the other adjustments appearing in the notice of deficiency ($ 1,488 of unemployment insurance in 1985, and recaptured earned income credits of $ 315 and $ 95, for 1985 and 1986, respectively) are automatic adjustments which will be resolved by our decision of *609 the primary issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The Stipulation of Facts, Supplemental Stipulation of Facts, and attached exhibits are incorporated herein by this reference. Michael W. Brown and Linda L. Brown (hereinafter petitioners) resided in Columbus, Ohio, at the time they filed their petition. During 1985 and 1986, Michael W. Brown (hereinafter petitioner) worked 40 hours a week as a purchasing agent for Buckeye Auto Parts in Columbus, Ohio. Petitioner first became interested in automobile racing in 1975. He bought two professionally built race car frames and then, with the help of his son and some friends, assembled two race cars. During the years in issue, petitioner tested his race cars, transported them to and from the racetrack, and drove them in races. Prior to acquiring his race cars, petitioner had no experience as a professional race car driver. In 1981, petitioner competed in his first race. During 1985 and 1986, he raced 1 night per week (of the 3 nights available) at the Columbus Motor Speedway, where prizes ranged from $ 50 to $ 450. On those nights when he did not win any races, he was awarded $ 20 in "tow *610 money" just for showing up. He also raced a few times at the Shady Bowl and Winchester raceways, where prizes ranged from $ 300 to $ 3,000, but did not win any races at either of these tracks. Petitioner also tried to qualify for the "big" races (where prizes ranged up to $ 10,000), but was unsuccessful in his attempts. Because petitioner raced weekly in 1985 and 1986, his car suffered a good deal of fatigue and consequential damage in those years. As a result, he later purchased sturdier and more durable equipment. Owners of race cars generally solicit sponsors to help finance their activity. These sponsors cover (at least partially) the costs of operating the race car in exchange for having their product advertised at the races. Between 1981 and 1986, petitioner solicited sponsors by personally visiting small business establishments. He did not secure a sponsor either prior to or during the years in issue. Petitioner did not keep any formal records of his racing activity. He had only one bank account in which he deposited receipts from all sources, including his wages, and from which he paid most of the expenses. Petitioner never attempted to project future expenses or *611 profitability of his automobile racing activity. On their Federal income tax returns, petitioners reported income and claimed deductions and net losses from automobile racing in the following amounts: Year
Income
Deductions
Losses
1981
$ 1,526
$ 4,863
$ (3,377)
1982
300
8,528
(8,228)
1983
1,700
10,144
(8,444)
1984
800
10,739
(9,939)
1985
1,165
12,353
(11,188)
1986
3,125
13,498
(10,373)
1987
2,915
9,966
(7,051)
1988
3,170
8,216
(5,046)
1989
2,159
8,127
(5,968)
In the notice of deficiency, respondent disallowed the $ 12,353 and $ 13,498 of deductions petitioner claimed for 1985 and 1986 on the grounds that he did not substantiate the expenditures and did not engage in automobile racing activity for profit. At trial, the parties agreed that petitioner incurred the following expenses in connection with automobile racing: 1985
1986
Item
Depreciation
$ 1,989
$ -0-
Van expenses
759
-0-
Meals
252
303
Other Schedule C expenses
6,934
10,917
Consequently, if we should find that petitioner raced for profit, all of the expenses listed above are properly deductible on his Schedule C; if not, petitioner is only entitled to Schedule *612 C deductions to the extent of his gross income from racing, specifically $ 1,165 in 1985 and $ 3,125 in 1986. [2]
OPINION As a general rule, to deduct losses incurred in any activity, a taxpayer must show that he or she entered into the activity, or continued the activity, with an objective of making a profit. Sec. 1.183-2(a), Income Tax Regs. If the taxpayer engaged in the activity without such profit objective, deductions attributable thereto are allowed, but (as applicable here) only to the extent of the income derived from the activity. Sec. 183(b)(1) and (2). The test under section 183 is whether the taxpayer engaged in the activity with an actual and honest objective of making a profit. Beck v. Commissioner, 85 T.C. 557, 569 (1985); Flowers v. Commissioner, 80 T.C. 914, 931 (1983); Dreicer v. Commissioner, 78 T.C. 642, 644-646 (1982), *613 affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. Hulter v. Commissioner, 91 T.C. 371, 392-393 (1988); Golanty v. Commissioner, supra at 426. The burden of proving such objective is on petitioner. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Greater weight is given to objective facts than to a taxpayer's statement of intent. Sec. 1.183-2(a), Income Tax Regs.; Beck v. Commissioner, 85 T.C. at 569-570; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors which normally should be considered in determining whether an activity is engaged in with the requisite profit objective. The nine factors are: (1) The manner in which the taxpayer *614 carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor, nor the existence of even a majority of the factors, is controlling. Rather, it is an evaluation of all the facts and circumstances in the case taken as a whole which is determinative. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Benz v. Commissioner, 63 T.C. 375, 382 (1974). After applying these criteria to petitioner's operation, we find that petitioner did not engage in automobile racing with an objective of realizing a profit therefrom. Although we base our decision on all of the facts, there are several factors *615 which we found most persuasive. First, although petitioner had no background in automobile racing prior to entering into this activity, he failed to seek out or consult with professional drivers to find out if there was any likelihood of making a profit. Moreover, there is no evidence that he did any planning on his own, either operational or financial, to determine when or how he would achieve profitability. He failed to project even the roughest estimate of his annual expenses in order to determine how much revenue he would have to generate in order to break even or produce a profit. Secondly, starting in 1981, petitioner sustained a long string of losses from his racing. Not only is the string of losses extensive, but the annual losses increased from year to year beginning in 1981 and continuing through 1985. Further, the loss that petitioner sustained in 1986 was only slightly less than the high reached in 1985. Yet, despite suffering this long string of losses, petitioner failed to consider alternatives in his method of operations which might have increased his revenues. For instance, he never considered participating in a greater number of races at the Columbus Motor *616 Speedway, despite the fact that he raced only 1 night in three. Nor did he make any effort to race in tracks located farther away from his home despite the fact that some of those tracks awarded considerably higher prize money. Moreover, petitioner did not expand his efforts to obtain sponsors, although such sponsorships would have offset at least some of his expenses and were crucial to achieving profitability. Rather, this record convinces us that petitioner pursued his automobile racing because he was interested in the sport. He spent a great deal of time building and then fixing up his cars. He participated only in races held close to his home. He confined his racing to 1 night a week. Although, at trial, petitioner attempted to explain many of these factors, we are still left with the overall impression that petitioner pursued the activity without focusing on its profit potential. Petitioners carry the burden of proving whether they entered into their automobile racing activity with an actual and honest objective of making a profit during the years 1985 and 1986. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Based on the foregoing, we find *617 that they have failed to do so. Accordingly, we hold that petitioners may not deduct losses attributable to their automobile racing activity. To reflect the foregoing -- Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties have agreed that petitioner is entitled to deduct his auto racing expenses to the extent of his gross income therefrom on Schedule C.↩